Good morning, your honors. Can everyone hear me and see me? Thank you. Your honors, if I may begin. I'd like to reserve two minutes for later. Your honors, if it pleases the court, my name is Justin Lum. I represent the petitioner Samuel Sentosa. Your honors, this is a case where it is Mr. Sentosa's position that the BIA should have held that he should have received withholding of removal based upon his testimony in immigration court. And I have just three points to make. Two points specifically as to the disfavored group. Mr. Sentosa actually appeared before trial court three times. The first two times he appeared, the trial court granted him asylum. And then after a motion by the government, when it was remanded, then granted him withholding of removal. It found that he was credible all three times he appeared, even though the third time the court denied his application for removal. Nonetheless, it still stated that his testimony was credible. Therefore, Mr. Sentosa's testimony as to the incidents that occurred in Indonesia, the acts of persecution against him, twice he indicated because he was Christian, once because he was Chinese. The second time the BIA denied or granted the government's appeal. Since you're short on time and we're pretty familiar with the record, I'd like to ask you some questions regarding the past persecution. Because what's your best authority that the past harms? And I think it's those three incidents that you were talking about, that Mr. Sentosa experienced amount to past persecution. You really didn't cite any cases in your brief. So what's your best authority for that? Well, Your Honor, I would say that I would say that both, going back to Okaeri, Okaeri has stated that any acts of, well, Your Honor, I would probably go back to Lo Long and Okaeri, where you have acts of, clearly acts against him because he, especially the first and the third incidents, when he testified as to the first incident, because he was conducting a Christian, I believe he was attacked because he was attacked as a Christian and he was severely beaten. And in the third instance, when he was warned off from conducting religious activities at school as a youth, as a youth leader, in both those situations, particularly, you have a situation where he was prevented from practicing his religion. And in the first instance, he was beaten. The second instance, he was basically warned off that, you know, if this happens again, then you're going to be in trouble. But Okaeri came out with no finding of no past persecution, right? I mean, he was successful on the disfavored, at least on the remand, but Okaeri itself found that the evidence didn't compel that there was past persecution. Well, I think with Okaeri, it said that you're still required to show that there's an individualized chance. I understand that, but looking at sequentially, you might say he's got three possible strings, past persecution, pattern or practice, disfavored group. If we start with past persecution, Okaeri doesn't help you, does it? Well, I think it goes back to saying that what Okaeri does, it says that the disfavored group applies to withholding a rural situation, which was the BIA's determination for why he could not be granted, why he couldn't be granted withholding of removal, is because it said that the disfavored group analysis didn't apply to withholding of removal. And that was in 2009, is that right? The Okaeri? The time that the court said that. And then at some point, there was a petition to this court. Was that issue raised in this court? I believe that petition was raised. I think it was it was then remanded to... But what was remanded appeared to be the past persecution issue. And I don't even think they mentioned the disfavored group analysis in the short-term dispo, did they? I'm trying to figure out the procedural background of this case. It's very confusing. Right. I'm not... The government isn't disputing that the disfavored nation issue is still alive. They're not contending that it wasn't raised here. And so instead, there seems to be an agreement that's still in the case. Is that right? Yes, their dispute is that there was insufficient past persecution. But you don't need past persecution for a disfavored group analysis. Well, you still have to... You still have to need individualized risk, but that's less than past persecution. Right. But it has to also be based upon the individualized risk still has to have some basis. You can't... It doesn't have to be amounted past persecution. I mean, no, no, no. It's not that these things didn't happen to him, but that there weren't enough to be past persecution. So there's no dispute that they happened to him, as you're saying. And so where are we on the disfavored group analysis in terms of the board? The last board decision was before Wackery and says that this rule doesn't apply here. And then it goes back a couple of times, I guess, to the immigration judge. And he essentially said with respect to the disfavored group, I mean, he seems sort of annoyed and he says, all right, I'm just adopting what the BIA said. All right. So, right. So the first... I think the first time it went back to the immigration court, the judge said there was individualized risk granting withholding of removal. This is the second time. The second time it went back to immigration court, it was a different judge than the first time. So that judge said there is enough to determine individualized risk. We're going to grant withholding of removal. The BIA then said, no, there's under sale. You can't apply individualized risk to withholding of removal case. Therefore, there's only determination of pattern or practice. All right. That's quite wrong. And then when it goes back to the BIA the last time, what does it say about the disfavored group? Well, the last time, because they just said, no, they upheld... Well, they just said that you looked at it back in 2009 and we're not going to think about it anymore. It was the way it was. Right. But your honor, that's correct. And then, and so then that's why it's on. That's why we filed a petition for review because again... But counsel, from your point of view, is it correct that even though you've won several times in different ways, they've never performed the appropriate disfavored group analysis? Is that your view? Yes, your honor, that the BIA has not correctly applied it. Well, to the extent that the disfavored view analysis isn't before us, because I'm not quite sure that it is, but to the extent that it is, can you point to any case, Mr. Long, where this court has determined a past harm similar to what Mr. Sentosa experienced was sufficient evidence of an individualized risk of harm to satisfy the withholding of removal standard for disfavored group analysis? Not asylum, but for withholding. What's your best case for that? Well, your honor, I can't say that if you're trying to say that there's sort of a best case where it's exactly these type of facts and these situations, I think, you know, it kind of goes back to, you know, the analysis of the whole idea of the disfavored group and the individualized risk because it goes back to... I'm sorry. I understand that, but what is your best case for individualized risk and disfavored group for withholding removal? Well, your honor, I mean, although you would say that the facts are not in our favor, but I would still argue that, you know, what we're talking about is, well, Kerry is a case that supports it. And only because, your honor, the facts, again, the facts in this case are because, not because of past persecution, but past persecution in the sense that the fact that he hasn't persecuted as a Christian in the past and that as a Christian, these things will follow him if he returns means that he has an individualized risk. It is a demonstration of the individualized risk that he faces. So therefore, that is why the disfavored group analysis applies to him. So even though you say, well, in that case, they didn't find it, but you have to look at the facts. His situation, I mean, when you say individualized risk, then each case is going to depend upon that individual, how that individual's situation is. And his situation is that even at the very last one, he was a youth group leader. So when he goes back, you know, it's going to be discovered that he was a youth group leader before. So his past is going to follow him. And Indonesia is not a country in which you can move around as easily as the United States. Typically, you end up back where you were and people know who you are. They determine what your past is. And we know that Christians are a disfavored group in Indonesia. But Indonesia had huge amounts of differences in many places and many islands and many neighborhoods. Well, again, Your Honors, but, you know, I've seen it used as an argument by the government that you cannot argue that something that happens in one area of the country should be allowed to affect how an individual faces some persecution where he's located. Because as you noted, there's different activities in different areas. However, in this situation, Mr. Sentosa suffered where he was located. So we're not talking about other areas. We're talking about where he actually faced persecution at his location. And if he were to return, it isn't a case where, not like here, he could, instead of going back to California, he could go to New York. It's not that type of situation in Indonesia. They don't have that type of freedom of movement where you have that easily, you know, whether it's economics, whether it's, you know, politics, whether it's government, it's not as, the movement is not as easy as here. And, Your Honors, I've gone way over my time. Yes, you have. Are there any other questions? Thank you very much. We'll give you a minute and we're done. Thank you, Your Honors. Good morning, Your Honors. May it please the court, Michael Heiss on behalf of the respondent, the Attorney General of the United States. The petitioner's entire claim, as was confirmed in counsel's argument, hinges on the allegation that his client suffered past persecution. No, it doesn't. Excuse me. It doesn't hinge on that. I think because the alternative is a disfavored group analysis. As counsel's framed his argument, the fact that he suffered in his description past persecution means he has satisfied the disfavored group analysis. The governor's going to have to speak to that. I didn't think that. I thought, if we use the word persecution, not in the legal sense. Okay, if he had enough past persecution to be real persecution, he would win. But that's not what he's emphasizing at this point. He's somewhat persecuted. And if he has an individual risk and belongs to a disfavored group, which I think we agree he belongs to disfavored groups, then he's entitled to an analysis of that. That's the way I understand the argument. If there's a pattern and practice against your group, you win. If your group is simply disfavored, then the agency should look at what happened to you, the degree of persecution, the degree of individualized risk. Am I wrong about the general legal setup here? Your honor, with respect to persecution in the legal sense, this is a legal proceeding. I'm separating that if you have past persecution in the full legal sense, then you win, or at least you get way ahead of the game. But there's the specific notion of you get withholding of removal if you belong to a disfavored group and your treatment, let's call it treatment, not persecution. Your treatment establishes an individual risk. And as I understand, his narrowest argument is he hasn't gotten that analysis, may not win on it, but he hasn't gotten that analysis. That's what I'm understanding as his most cogent basis. And let me just add on to this for something you could add or not, which is I've seen a fair amount of immigration cases. And this one is very unusual in the sense that he keeps winning below and the agency keeps going after him and reversing it above. Is there some reason that they're out to get him more specifically? Or I just have never seen the agency win before the BIA this many times. But the case came to this court previously based on the petitioner having filed a frivolous, knowingly having filed a frivolous asylum application, which has. And that's why he's never going to get asylum. That's why we're talking about withholding. That is a serious consideration in terms of his credibility going forward. Yes, the agency found that he was credible. But the frivolousness thing is sort of out of the picture now. The government did not take the position as brief, although it's not entirely clear to me either whether the disfavored group issue was kind of killed off in the first appeal. Apparently not in the first petition for review. You're not taking that position. No. No. So it's before us. So what is your understanding? I'm still having a lot of trouble getting a hold of the procedural question of what was addressed here about that. Now, looking at the 2009 BIA opinion, it appears that it did take Rachel account. Exactly. In 2009, was there an earlier, but at some earlier point, I thought it said it doesn't apply. What was the earlier point? The immigration judge before that, both parties appealed the immigration judges. The immigration judge the first time says it doesn't apply. Then it goes to the board and recognizes that it does apply. But it says that without any findings by the immigration judge previously on that issue, because the immigration judge sort of didn't apply, the BIA says there wasn't enough individual risk and the group doesn't make it. Then it goes back to the immigration judge. Who, I guess, never again, readdresses the disfavored group issue. He just keeps saying, well, this is what the BIA says. Is that right? Or did he address it at some point? The immigration judge, I think your honor is discussing the 2017 immigration judge decision at this point. Some immigration judge. Somewhere. There's several. 2017 is correct. Yeah. Again, that's a pretty extensive decision. 11 pages long. And there is a specific discussion regarding eligibility for withholding of removal, disfavored group analysis. That's an administrative record page 148, I believe. And that does refer back to the board's 2009 decision, which again, discussed all of that at length. So the concept that petitioner hasn't had his day in court on this issue is simply not supported by the record. But it never had an IJ finding of that, right? Because the BIA decided it was an IJ finding. And then the IJ said, well, I'm bound by what the BIA said. So he doesn't make a finding either. The immigration judge's statement in 2017 was agreeing with the board's 2009 analysis based on this court's subsequent precedent in terms of how- Where is that you're saying? Administrative record page 148. 148. Maybe it's 138. I'm looking at 148 right now. I hope I'm looking at the right record. Is that where the IJ- That's page 11. That's page 11 is the pagination. Is that correct, counsel? Page nine for me. That's 136, according to me. I think this happens a lot. Immigration judge's decision is in there twice. Okay, but if we're looking at page nine at the bottom, that's my best pagination. That's where he says the IJ incorporates by reference the BIA's prior decision that the respondent did not meet the standard. But if you go back to the BIA decision, which is at page five of the BIA's decision in 2009, I don't see that it does that. The BIA just said that you have to look at it for withholding different from asylum, and it cites Wakari. So as I understood it, the IJ's problem in 2017 was that he did not do the disfavored group analysis. He said, well, the BIA told me that it was already done, and that's not a fair reading of the BIA's 2009 decision at page five of that decision, where it cites Wakari. The board's decision there goes on to discuss what the standard is and applies it. The administrative record at page 380, page six of the board's decision states that the immigration judge erroneously concluded that the respondent established past persecution because the harm to which the respondent testified is not sufficiently severe. This evidence of individualized risk is insufficient to meet the, quote, considerably larger quantum of evidence required by the Ninth Circuit and Wakari. But the analysis happened there. So what petitioners calling upon the court here is to say, well, that's not enough. And yet this court has consistently held, as has every other court in the country, that the board need not draft an exegesis laying out and expressly considering every piece of evidence. It only has to show that the court considered the claim and didn't merely react. And that's what we have here. We've had extensive back and forth in these cases. And back to the point— Can you show me where—I'm sorry to keep reiterating this. But the IJ—the problem seems to me that the IJ never made any fact findings on his favorite group. Is that right? Never did. I don't believe that's the case. I'm sorry, what? I believe the IJ made fact findings, finding that he was a member of a disfavored group and that he had said— Yeah, where is that? Pardon. That would be the 2008 decision. I don't have the administrative record site in front of me. Well, and the 2008 decision is where he said that it doesn't apply, right? Let me see if I can find it. Apologize. I'm sorry to—it's just very confusing. I think we're all a little confused. Yeah, really, this is not the most simple case I've ever seen. All right, in 2008, on page 458, discusses sale and then says that the— Yeah, that's the— And then he says— 458, yes. I see that now. And then he says—let's see. I saw it. And then he says that he meets the standard of sale. And it's so confusing. All right, so he does grant him the withholding, and that's why it was overturned by the board. Correct, and it was under a disfavored group analysis. The question is the weight afforded to his evidence, and the board can reweigh evidence as to whether or not a standard, a legal standard, has been satisfied. And that's what's important here. If I may finally address Judge Boggs' question. I realize I'm well over my time with that. That's a really critical point, if I may, regarding the legal sense of persecution. Again, that is a crucial term of art in immigration law. And to argue that he has suffered past persecution is a very specific thing. Is past persecution a requirement for a disfavored—prevailing on a disfavored group win? No. Is it a strong indicia of the likelihood of success or the likelihood of that happening? Absolutely. Well, suppose we thought that whether or not he established past persecution, he was close, was at least close, i.e. So that would suggest that there was a pretty high level of individualized risk, because that's a lesser standard. And then we have umpty-um cases holding that both Christians and Chinese in Indonesia are a disfavored group. So why doesn't he win at that point? Because the agency is entitled to weigh all of those factors and to reach a conclusion. This court cannot re-weigh evidence when applying the substantial evidence standard. That's not clearly erroneous. But the agency really gave us much of a clue as to why they didn't think the individualized risk was enough. And they also said, and they have to be wrong about this, that the group is—they didn't establish that it was actually a group. I don't think there's any dispute as to— Well, there is a dispute. The BIA's last 2009 ruling said that there wasn't a group. I don't believe that's the case. So I may— It is the case. That's the only thing I'm sure of in this case. Can I ask you a question regarding past persecution, please? I'm sorry. Because it seems like Mr. Sentosa was physically assaulted, attacked by a mob, and his life was threatened by two men with a knife, apparently based for his religion. Why does that not compel a finding of past persecution here, especially in light of our case law that says these past harms are viewed cumulatively? Again, that's a weight of the evidence question. Petitioner has done a good job in his brief in studying that harm. What's the best case for you? One moment, please. My brief just jumped. Sorry, I've been bouncing around a lot of files here. On page 13 of the government briefs, we discussed several cases from this court. What's the best one for you? I mean, for the general statement that harassment is not persecution, would be gu. In this situation, probably Canales-Vargas, in which the petitioner endured five or six threatening notes and various threatening phone calls, including bomb and death threats, was not compelling evidence of past persecution. Again, it's a case-by-case analysis. But you can't divide it into pieces, okay? He had a threat, but he also had somebody, he had a direct attack on him, and he had a physical attack on him, and he had somebody, and he had a mob going after his car and breaking the windows and glass falling on him and so on, right? And in none of those cases- You can take each individual piece, but you have to put them all together. Absolutely. And what the agency looked at here was that in each of those cases, he was not targeted because of him being Mr. Santosa. He was targeted perhaps because of his ethnicity, in the fact that he was present as that ethnicity, or he was present as a member of that religion, not because of him doing it. As you noted a while ago, your time is logged up, but it's our fault. I am well over my time. Thank you, Your Honor. Mr. Lum. Your Honors, I would just briefly state that the BIA, in 2009, said that it denied the courts with holding a removal finding. Any statement that will carry would not allow it because there's a higher standard. What will carry said was that the application of individualized risk should apply to withholding of removal as well. And I believe that the immigration court, which is the trier of fact, which not only can hear testimony- It not only reads as evidence, but of course, here's the testimony of the individual. The original judge granted asylum. That was denied. The second judge did find, based upon his testimony, that he did satisfy withholding of removal under a disfavored group analysis. As Your Honors noted, the amount of persecution was obviously enough for the initial judge to make a finding of asylum. So the idea that in this case- But that was partly on the basis of the fraudulent- Well, I understand, Your Honor, but- I mean, you can't rely on that. Okay, Your Honor. Granted, but even in a finding of withholding of removal, the second immigration court determined that he had met his standard to show there was individualized risk based upon the persecution or, as Judge Kopp said, based upon his treatment in Indonesia. And certainly, situations with Christians are even considered more of a problem than even Chinese. I know that there have been cases in which there's maybe a lesser risk for Chinese, but in this case, the two major incidents were as a Christian. So, Your Honor, again, we would state that there was sufficient information, and the BIA should have not come up with the decision they did. Okay, thank you both very much. Thank you, Your Honors. Apologies for taking over your time. The case of Sanchoza v. Garland was submitted, and we'll take an eight-minute break.
judges: Boggs, Berzon, Murguia